UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTOPHER CHISHOLM,                          :
                                               :
                    Petitioner,                :
                                               :
            v.                                 :      **DECISION & ORDER**
                                               :      16-CV-5394 (WFK)
SUPERINTENDENT UHLER,                          :
                                               :
                    Respondent.                :
------------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Christopher Chisholm ("Petitioner"), proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1 (the "Petition"), challenging his conviction for, among others, Murder in the Second Degree, Attempted Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree, Reckless Endangerment in the First Degree, Endangering the Welfare of a Child, Burglary in the First Degree, Burglary in the Second Degree, two counts of Assault in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. Petitioner raises five claims: (1) deprivation of his right to a fair trial due to prosecutorial misconduct; (2) ineffective assistance of trial counsel; (3) judicial error and abuse of discretion; (4) violation of the right against self-incrimination; and (5) the evidence against Petitioner was not legally sufficient. Petition at 5-21.[1] For the reasons below, the Petition is DENIED in its entirety.

## BACKGROUND

### I.      Conviction and Sentencing

On April 17, 2006, at approximately 1:25 P.M. outside of 103-11 Farmers Boulevard in

Queens County, Petitioner fired a .380 caliber firearm in the direction of Nathanial Davis,

Phenton Edwards, Courtney Petrie, and Courtney Petrie's child. Resp. Aff. in Opp. to Petition ¶

4, ECF No. 14 ("Resp. Aff."). An unknown male with Petitioner fired a shotgun at the same

victims. *Id.* Davis was shot in the stomach and died the following day as a result of his injuries.

*Id.*

---

[1] As the Petition is comprised of multiple documents without consistent pagination, in this Decision & Order page citations to the Petition refer to the PDF page number of the ECF docket entry.

On June 30, 2006, Petitioner and Anthony Lalor entered the basement apartment of Amadou Diallo and assaulted him, leaving him injured and unconscious. *Id.* ¶ 5. Petitioner and Lalor were found hiding in the stairwell and were arrested. *Id.* Two days later, police officers recovered a defaced .38 caliber firearm and a .380 caliber firearm from the home of Diallo, which was determined to be the same firearm used in the shooting of Davis. *Id.*

For the April 2006 incident, Petitioner was charged under Queens County Indictment Number 2462/06 with Murder in the Second Degree in violation of New York Penal Law ("NYPL") § 125.25(1), Attempted Murder in the Second Degree in violation of NYPL §§ 110.00, 125.25(1), Criminal Possession of a Weapon in the Second Degree in violation of NYPL § 265.03(2), two counts of Criminal Possession of a Weapon in the Third Degree in violation of NYPL §§ 265.02(1), 265.02(4), Reckless Endangerment in the First Degree in violation of NYPL § 120.25, Criminal Possession of a Weapon in the Fourth Degree in violation of NYPL § 265.01(2), and Endangering the Welfare of a Child in violation of NYPL § 260.10(1). *Id.* ¶ 6.

For the June 2006 incident, Petitioner was charged under Queens County Indictment Number 1820/06 with two counts of Burglary in the First Degree in violation of NYPL §§ 140.30(1), 140.30(2), Burglary in the Second Degree in violation of NYPL § 140.25(2), two counts of Assault in the First Degree in violation of NYPL §§ 120.05(1), (6), two counts of Criminal Possession of a Weapon in the Second Degree in violation of NYPL §§ 265.03(1)(B), 265.03(3), Criminal Possession of a Weapon in the Third Degree in violation of NYPL § 265.02(3), and two counts of Criminal Possession of a Weapon in the Fourth Degree in violation of §§ 265.01(1), 265.01(2). *Id.* ¶ 7.

On March 23, 2009, the two indictments were consolidated under Queens County Indictment Number 2462/06. *Id.* ¶ 8. Petitioner was convicted by a jury of Murder in the

Second Degree in violation of NYPL § 125.25(1), Attempted Murder in the Second Degree in violation of NYPL §§ 110.00, 125.25(1), Criminal Possession of a Weapon in the Second Degree in violation of NYPL § 265.03(2), Reckless Endangerment in the First Degree in violation of NYPL § 120.25, Endangering the Welfare of a Child in violation of NYPL § 260.10(1), Burglary in the First Degree in violation of NYPL § 140.30(2), Burglary in the Second Degree in violation of NYPL § 140.25(2), two counts of Assault in the First Degree in violation of NYPL §§ 120.05(1), 120.05(6), one count of Criminal Possession of a Weapon in the Second Degree in violation of NYPL § 265.03(3), and Criminal Possession of a Weapon in the Third Degree in violation of NYPL § 265.02(3).  Petitioner was acquitted of the charges of Burglary in the First Degree in violation of NYPL § 140.30(1) and Criminal Possession of a Weapon in the Second Degree in violation of NYPL § 265.03(1)(B).[2]  *Id.* ¶ 9; R. 1300-05.[3]

On April 20, 2011, Petitioner was sentenced to consecutive prison terms of 25 years to life for Murder in the Second Degree, 25 years of incarceration followed by 5 years of post-release supervision for Attempted Murder in the Second Degree, and 25 years of incarceration followed by 5 years of post-release supervision for Burglary in the First Degree.  Resp. Aff. ¶ 10. The court also imposed concurrent prison terms of 15 years followed by 5 years of post-release supervision for the charge of Criminal Possession of a Weapon in the Second Degree and for Burglary in the Second Degree, 7 years of incarceration followed by 5 years of post-release supervision for each of the two counts of Assault in the Second Degree, between 3.5 and 7 years

---

[2] Prior to trial the State dismissed two counts of Criminal Possession in the Third Degree, one count of Criminal Possession in the Second Degree, and five counts of Criminal Possession in the Fourth Degree. Resp. Aff. ¶ 9 n.2.
[3] Citations to "R." refer to the State Court Record, ECF No. 15. Citations to the record follow the pagination assigned by the Electronic Court Filing system.

for Reckless Endangerment in the First Degree and Criminal Possession of a Weapon in the Third Degree, and 1 year for Endangering the Welfare of a Child. *Id.*; R. 1190-93.

## II.    Post-Conviction Activity

In April 2014, Petitioner perfected a direct appeal to the New York State Appellate Division, Second Department ("Second Department") alleging (1) he was denied his due process right to a fair trial due to prosecutorial misconduct; (2) the trial court erred in admitting highly prejudicial evidence without a proper foundation; (3) he did not receive the effective assistance of counsel; (4) the prosecutor failed to make a timely disclosure of exculpatory *Brady* information; (5) the trial court erred in granting consolidation, as it denied Petitioner the ability to take the stand on his own behalf; and (6) there was insufficient evidence to prove Petitioner caused the death of the decedent, Davis, and the verdict was against the weight of the evidence. Resp. Aff. ¶ 11.

On March 4, 2015, the Second Department affirmed Petitioner's judgment of conviction. *Id.* ¶ 14; *see People v. Chisholm*, 2 N.Y.S.3d 365 (N.Y. App. Div. 2015). The Second Department found there was legally sufficient evidence to establish Petitioner's guilt for the charge of Murder in the Second Degree beyond a reasonable doubt and that the guilty verdict was not against the weight of the evidence. Resp. Aff. ¶ 14, R. 181. The Second Department also found the Supreme Court did not abuse its discretion in consolidating the two indictments and that Petitioner was not deprived of meaningful representation. *Id.* Finally, the Second Department found Petitioner failed to preserve the rest of his claims for appellate review and that in any case the claims were without merit. *Id.*

Petitioner requested permission to appeal to the New York Court of Appeals on March 12, 2015, arguing (1) the evidence was legally insufficient to establish Petitioner's guilt beyond a

reasonable doubt, (2) the prosecutor failed to turn over *Brady* material prior to trial, specifically, information about Diallo's availability to testify at trial, and (3) Petitioner received ineffective assistance of trial counsel because of trial counsel's failure to preserve arguments for appeal. R. 182-89. Among the alleged errors committed by trial counsel, Petitioner includes: (a) failure to object to prejudicial prosecutorial statements (e.g., "snitches get stitches"); (b) failure to object to bolstering statements (e.g., describing certain evidence as "credible evidence"); (c) failure to cross-examine certain witnesses, including Detective Valenti, who performed the ballistics comparison test, and Detective Reichert, who searched for Diallo prior to trial; and (d) failure to object to the admission of the guns after testimony established only the operability of the firearms but not a connection to the Petitioner. *Id.* at 189. By certificate dated September 11, 2015, the Court of Appeals denied Petitioner's application for leave to appeal. R. 268; *see People v. Chisholm*, 40 N.E.3d 580 (N.Y. 2015) (Rivera. J.).

In a *pro se* motion, dated September 8, 2016, Petitioner moved for *coram nobis* relief, arguing he was deprived of the right to effective assistance of appellate counsel. Resp. Aff. ¶ 18. Petitioner argued appellate counsel's brief was inadequate because it contained claims that were unpreserved for appeal or better suited for collateral proceedings. *Id.* Petitioner also argued appellate counsel failed to raise other claims, including that (1) the trial court erred in allowing the decedent's family to wear memorial badges during trial, (2) the trial court erred in refusing to conduct an inquiry into whether any jurors saw or read about the courtroom arrest of Petitioner's co-defendant, Anthony Lalor, and (3) Petitioner was deprived of his right to a fair trial because of the conduct of the prosecutor. *Id.;* R. 276-311. On June 7, 2017, the Second Department denied Petitioner's motion. *Id.* ¶ 20; *see People v. Chisholm*, 53 N.Y.S.3d 559 (N.Y App. Div. 2017).

Petitioner filed an updated Notice of Appeal, seeking leave to appeal to the New York Court of Appeals, which was received by the court on September 5, 2017. Resp. Aff. ¶ 21. The Court of Appeals denied leave to appeal on October 19, 2017. *Id.*; *see People v. Chisholm*, 89 N.E.3d 1261 (N.Y. 2017).

On May 14, 2019, Petitioner filed a motion to vacate the judgment in Queens County Supreme Court pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, arguing he received ineffective assistance of counsel at his arraignment on the burglary charges. Pet. Ltr., ECF No. 20. The Queens County Supreme Court denied the motion on January 10, 2020, and the Second Department denied leave to appeal on June 17, 2020. Resp. Ltr., ECF No. 37.

Although Petitioner filed the present petition for a writ of habeas corpus on September 29, 2016, the petition was held in abeyance to allow him to exhaust his claims in state court. Resp. Aff. ¶ 17. The petition contends (1) Petitioner was denied his due process right to a fair trial due to prosecutorial misconduct resulting from comments made during opening and closing statements and the State's failure to timely disclose exculpatory *Brady* material; (2) Petitioner received ineffective assistance of trial counsel; (3) the trial court erred in (a) allowing family and friends of the victim to wear "memorial badges" in court, (b) failing to question jurors to determine whether any of them had witnessed or read about Lalor's courtroom arrest, and (c) allowing the introduction of "highly prejudicial evidence" without a proper foundation or chain of custody; (4) the trial court erred in granting the State's motion to consolidate two indictments, resulting in a violation of Petitioner's right against self-incrimination; and (5) the evidence was legally insufficient to establish guilt beyond a reasonable doubt with respect to the charge of Murder in the Second Degree. Pet. at 5-21.

**LEGAL STANDARD**

The Court's review of the Petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  A federal habeas court may only consider

whether a person is in custody pursuant to a state court judgment "in violation of the Constitution

or laws or treaties of the United States."  28 U.S.C. § 2254(a).  As here, when the petitioner's

claims have been rejected on the merits by a state court, the court "may grant a writ of habeas

corpus only if that decision 'was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States' or if the

decision 'was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'" *McCormick v. Jacobson*, No. 16-CV-1337 (ERK)

(LB), 2021 U.S. Dist. LEXIS 240512, at *6 (E.D.N.Y. Dec. 16, 2021) (Korman, J.) (quoting 28

U.S.C. § 2254(d)).  Judicial review under the "unreasonable application" prong is "extremely

deferential," *id.*, and a "state court's determination that a claim lacks merit precludes federal

habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's

decision." *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (citation and internal quotation

marks omitted).

**DISCUSSION**

**I.      Petitioner's Claims of Prosecutorial Misconduct**

Petitioner first argues prosecutorial misconduct denied him due process because the

prosecution (1) failed to provide exculpatory evidence regarding the availability of a witness,

Diallo, and *Rosario* evidence regarding the victim's damaged clothing; (2) made inflammatory

statements during opening statements and summations; (3) mischaracterized evidence; (4)

improperly bolstered the prosecutorial office's own credibility; (5) asked leading questions; (6)

published a photograph not in evidence; and (7) shifted the burden of proof about ownership of the murder weapon to Petitioner. Pet. at 6-12.

The Court finds (1) Petitioner has not fully exhausted his claims with respect to prosecutorial misconduct, (2) his claims of prosecutorial misconduct are procedurally barred by independent and adequate state grounds, and (3) the prosecutor's conduct did not deprive Petitioner of a fair trial.

### A. Petitioner Has Not Fully Exhausted His Claims of Prosecutorial Misconduct

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *see also* 28 U.S.C. § 2254(b)(1). "A claim is deemed exhausted if the petitioner: (1) fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear it." *Wright v. Lee*, No. 13 Civ. 5392 (PGG) (SN), 2015 WL 4391575, at *7 (S.D.N.Y. July 15, 2015) (Gardephe, J.) (internal quotation marks and citations omitted).

A petitioner "must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye v. Att'y Gen. of State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc); *see also Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *Ramirez v. Att'y Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001). Even if a petitioner has presented a constitutional claim in state court, the petitioner may not then assert new facts

8

which materially alter the claim or crucially affect its determination for the first time in federal court. *See Anderson v. Casscles*, 531 F.2d 682, 684 (2d Cir. 1976).

Although Petitioner raised some of his claims of prosecutorial misconduct on direct appeal, he failed to raise others either on direct appeal or on collateral attack. Specifically, Petitioner did not raise the argument that the prosecutor failed to provide the victim's clothing in violation of *Rosario* obligations, the argument the prosecutor asked leading questions, or the argument about certain statements the prosecutor made during his opening remarks (*i.e.*, "Out of all 380 pistols . . . it only matched one and that pistol . . . came right from this defendant."). Because these claims have not been asserted previously, they have not been fairly presented as federal constitutional claims to a state court and are thus not yet exhausted.

Petitioner did raise in his writ of error *coram nobis* the argument that the prosecutor engaged in misconduct by shifting the burden of proof as to the ownership of the gun. However, "[i]n a criminal action, the writ of error *coram nobis* lies in the state appellate court only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (per curiam) (quoting *People v. Gordon,* 584 N.Y.S.2d 318, 318 (N.Y. App. Div. 1992)). Claims presented within an argument for ineffective assistance of appellate counsel are not considered exhausted. *See Tineo v. Heath*, No. CV-09-3357 (SJF), 2012 WL 4328361, at *6 (E.D.N.Y. Sept. 19, 2012) (Feuerstein, J.); *Jones v. Senkowski*, 42 F. App'x 485, 487 (2d Cir. 2002) (summary order).

Further, Petitioner can no longer raise these issues in state court. A petitioner is only allowed one direct appeal, and a collateral attack pursuant to CPL § 440.10 is reserved for claims not on the record. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991); *Takie v. Downstate Corr.*

9

*Facility Superintendent*, No. 19-CV-5308 (RPK), 2020 WL 4041132, at *6 (E.D.N.Y. July 17, 2020) (Kovner, J.). A claim is procedurally defaulted if a state prisoner has failed to exhaust state remedies with respect to a claim but can no longer raise the claim in state court. *See St. Helen v. Senkowski*, 374 F.3d 181, 182-83 (2d Cir. 2004); *Strogov v. Att'y Gen. of State of New York*, 191 F.3d 188, 191-93 (2d Cir. 1999); *Washington v. James*, 996 F.2d 1442, 1446-47 (2d Cir. 1993).

A petitioner can overcome this bar on review if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause for the default, a habeas petitioner must show that "some objective factor external to the defense" impeded the petitioner's ability to present the claim. *Id.* at 753. Such a scenario may exist where "the factual or legal basis for a claim was not reasonably available to counsel" or when "some interference by officials . . . made compliance impracticable." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To establish prejudice, a petitioner must show "'there is a reasonable probability' that the result of the trial would have been different" absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). A petitioner may also be able to overcome a procedural default if he can prove "actual innocence" such that a failure to consider the claims will result in a "fundamental miscarriage of justice." *See McQuiggin v. Perkins*, 569 U.S. 383, 383–84 (2013).

In his writ of error *coram nobis*, Petitioner claimed his appellate attorney failed to raise certain arguments of prosecutorial misconduct on direct appeal but failed to raise that argument in the present writ to demonstrate cause for the default. Petitioner has not provided any evidence of prejudice or support for an argument of actual innocence resulting in a miscarriage of justice.

Therefore, the claims have not been fairly presented to the state court are deemed unexhausted and procedurally barred.

## B.   Petitioner's Remaining Prosecutorial Misconduct Claims Are Also Procedurally Barred Under an Independent and Adequate State Ground

In its decision on Petitioner's direct appeal, the Second Department held Petitioner's claims of prosecutorial misconduct were not preserved for review because Petitioner failed to comply with New York's procedural rules. *People v. Chisholm*, 2 N.Y.S.3d 365 (N.Y. App. Div. 2015). If a state court's disposition of a federal claim is based upon state law that is "independent of the federal question and adequate to support the judgment," that claim is procedurally barred and unavailable for federal habeas review. *Downs v. Lape*, 657 F.3d 97, 101-02 (2d Cir. 2011) (citations and internal quotation marks omitted); *see also Cone v. Bell*, 556 U.S. 449, 465 (2009).

"The independent prong of this concept means the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case by clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Terrell v. Kickbush*, No. 17-CV-7027, 2019 WL 3859512 (JFB), at *5 (E.D.N.Y. Aug. 16, 2019) (Bianco, J.) (quoting *Harris v. Reed*, 489 U.S. 255, 261-63 n.12 (1989)); *see also Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018) (citation and quotations omitted). "[W]hen a state court says a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (Sotomayor, J.); *Licausi v. Griffin*, 460 F. Supp. 3d 242, 256 (E.D.N.Y. 2020) (Brown, J.). The failure to preserve an argument has been found to be an independent and adequate state ground. *See Rodriguez v. Smith*, 485 F. Supp. 2d 368, 380 (S.D.N.Y. 2007) (Chin, J.) ("The New York Appellate Division dismissed

11

petitioner's claim of prosecutorial misconduct based on his failure to preserve it for appeal . . . . Such a decision represents a judgment based on grounds that are 'independent of the federal question and adequate to support the judgment.'") (quotations and citations omitted); *Reyes v. Cunningham*, No. 07 Civ. 1044 (PKC) (THK), 2009 WL 1146432, at *16 (S.D.N.Y. Apr. 28, 2009) (Castel, J.); *Hiers v. Bradt*, No. 11-CV-0270 (ERK), 2014 WL 6804252, at *4 (E.D.N.Y. Dec. 3, 2014) (Korman, J.); *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996).[4]

To be adequate, a state law ground must be "firmly established and regularly followed by the state." *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) (internal citations and quotation marks omitted). A state law basis is adequate if "the case law interpreting [the state law] . . . displays consistent application in a context similar to [the instant case]." *Id.* at 220 (citation omitted).

Because the Second Department held Petitioner's claims of prosecutorial misconduct were not preserved for review for failure to comply with New York's procedural rules, these claims are barred by an adequate and independent state ground.

However, a Petitioner "may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012) (citing *Coleman*, 501 U.S. at 750). Petitioner has not presented good cause for the default, evidence of prejudice as a result of the violation, or evidence of actual innocence that would have led to a miscarriage of justice. *Coleman*, 501 U.S. at 750. Instead, Petitioner argues

---

[4] Under New York State Law, to preserve an issue for appeal, a contemporaneous specific objection must be lodged at trial and if the objection is not sustained, the objecting party must seek further relief. CPL § 470.05(2); *see also Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir. 2007); *Jodhan v. Ercole*, No. 07 Civ. 9263 (RMB) (JCF), 2008 WL 819311, at *5 (S.D.N.Y. Mar. 28, 2008) (Francis, Mag. J.), *report and recommendation adopted*, No. 07 CIV. 9263 (RMB) (JCF), 2008 WL 2477457 (S.D.N.Y. June 16, 2008) (Berman, J.).

12

in the present writ he received ineffective assistance from trial counsel in part because of counsel's failure to object at trial to the alleged prosecutorial misconduct.  Pet. at 5.  However, petitioner's ineffective assistance of trial counsel claims are themselves procedurally barred and therefore are not sufficient cause to overcome the procedural bar.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *see also Rodriguez*, 485 F. Supp. 2d at 380 ("Because I again reject petitioner's claim of ineffective assistance of counsel, Rodriguez's procedural default is not excused for cause. . . ."); *Ekwegbalu v. Chappius*, No. 17-CV-0759 (BMC), 2021 WL 3111907, at *5 (E.D.N.Y. July 22, 2021) (Cogan, J.) ("[I]f a petitioner wishes to rely on ineffective assistance, the ineffective assistance claim must itself have been exhausted in the state court."); *Michel v. Kirkpatrick*, No. 18-CV-2469 (PKC), 2020 WL 5802314, at *7 (E.D.N.Y. Sept. 29, 2020) (Chen, J.) ("Because Petitioner cannot satisfy the cause and prejudice standard for an ineffective assistance of counsel claim, trial counsel's alleged ineffectiveness cannot serve as cause to excuse the procedural default with respect to Petitioner's erroneous supplemental jury instructions claim.").

Petitioner's claims of prosecutorial misconduct are procedurally barred by adequate and independent state grounds, and he has presented no evidence of good cause, prejudice, or actual innocence that would lead to a miscarriage of justice.  As such, the Court may not review the claims here.

**II.     Petitioner's Ineffective Assistance of Trial Counsel Claims**

In his second claim Petitioner argues he received ineffective assistance of counsel at the trial stage.  Some of Petitioner's claims are not exhausted and thus procedurally barred.  The

remaining claims are denied, as the state court's determination was neither contrary to, nor an unreasonable application of, the law.

### A. Some Of Petitioners Claims Are Unexhausted and Procedurally Barred.

Petitioner argues his trial counsel failed to: (1) object to the prosecutor's misconduct, including inflammatory and prejudicial statements; (2) cross-examine Detective Reichert and Detective Valenti; (3) conduct a pre-trial investigation; (4) request *Rosario* or *Brady* material; (5) visit the crime scene; (6) locate the witnesses Amadou Diallo and Courtney Petrie; (7) object to the improper introduction of the murder weapon and other items recovered after the burglary or request an evidentiary hearing as to their relevance; (8) secure assistance of expert consultants to permit efficient cross-examination of expert witnesses; (9) impeach the testimony of Phenton Edwards; (10) request DNA testing; (11) request evidentiary hearings; (12) examine all available evidence; (13) examine the weapon analysis report; (14) file a motion to sever the two indictments; and (15) request a line-up after Phenton Edwards identified Petitioner in a photo array. Pet. at 14-18.

Claims (3) through (15) are procedurally barred because Petitioner failed to raise them on direct appeal or collateral attack. *See Harris*, 489 U.S. at 263 n.9; *see also Licausi*, 460 F. Supp. 3d at 255. Moreover, Petitioner has neither raised any valid arguments for cause or prejudice, nor alleged actual innocence that could overcome this procedural bar. Although Petitioner alleged ineffective assistance of appellate counsel in his writ of error *coram nobis*, which may explain why Petitioner failed to raise these claims in state court, Petitioner failed to raise any of the specific claims raised above in his petition, arguing only that appellate counsel raised claims of ineffective assistance of trial counsel that would have been more suitable in a collateral proceeding.

Petitioner also did not file a timely appeal with the Court of Appeals with respect to his

ineffective assistance of appellate counsel claims.  In New York, a petitioner has thirty days from

a judgment to appeal a decision.  CPL § 460.10(1)(a).  Here, the Second Department denied

Petitioner's writ on June 7, 2017.  *People v. Chisholm*, 53 N.Y.S.3d 559 (N.Y. App. Div. 2017).

The New York Court of Appeals received Petitioner's application for leave to appeal on

September 5, 2017 and denied it on October 19, 2017.  *People v. Chisholm*, 89 N.E.3d 1261

(2017).  Petitioner cannot rely on an unexhausted ineffective assistance of counsel claim as cause

for overcoming a procedural default.  *See Ekwegbalu*, 2021 WL 3111907, at *5.  Additionally,

Petitioner had the opportunity to raise these specific claims in his motion to vacate the judgment

but failed to do so, raising only claims of ineffective assistance of arraignment counsel for

counsel's failure to adequately relay a plea agreement.  ECF No. 20.  As Petitioner has not raised

any argument to overcome the procedural bar, the Court cannot review his unexhausted claims.

## B. The State Court's Rejection of Petitioner's Remaining Claims Was Not Contrary to, or an Unreasonable Application of, Established Supreme Court Law

Petitioner argued on direct appeal and in his present petition that his trial counsel (1)

failed to object to prosecutorial misconduct, including improper, prejudicial, and inflammatory

statements and actions by the prosecutor; (2) failed to cross examine two prosecution witnesses,

Detective Reichert and Detective Valenti; (3) failed to object to the introduction of the murder

weapon and items discovered after the burglary; and (4) failed to file a motion to sever the two

indictments.  R. 46-50, 59; Pet. 14-18.  The Second Department rejected these claims and found

Petitioner had received meaningful representation.  R. 181.

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the relevant federal law

governing ineffective assistance of counsel claims.  In reviewing a state court's application of the

15

*Strickland* standard, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States [D]istrict [C]ourt." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). However, as an initial matter, the Court may evaluate whether defense counsel's performance was sufficient under *Strickland* because a finding defense counsel met the *Strickland* standard is dispositive of Petitioner's AEDPA claim for ineffective assistance of counsel. *Moreno v. Smith*, No. 06-CV-4602 (KAM), 2010 WL 2975762, at \*15 (E.D.N.Y. July 26, 2010) (Matsumoto, J.). Under *Strickland*, in order to prevail on an ineffective assistance of counsel claim, a defendant must show: (1) counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690; and (2) "the deficient performance prejudiced the defense," *id.* at 687, such that "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011). "It is the accused's 'heavy burden' to demonstrate a constitutional violation under *Strickland.*" *Moreno*, 2010 WL 2975762 at \*15 (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).

Under the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted).

Under the second prong, to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

The Second Department applied the New York State standard for evaluating ineffective assistance of counsel claims, which is more generous toward a defendant asserting the claim than the *Strickland* standard. Under the *Strickland* standard, there must be a reasonable probability the outcome of the proceeding would have been different, whereas the standard in New York State is whether the defendant had meaningful representation. *Rosario v. Ercole*, 601 F.3d 118, 125 (2d Cir. 2010) (citing *Benevento*, 91 N.Y.2d at 713). Under the New York State standard, even if the outcome of the proceeding were to remain the same, there could still be a finding of prejudice. *Id.* The Second Circuit has held that the New York standard is not contrary to *Strickland. Id.* at 126.

Petitioner claims trial counsel failed to object to improper, prejudicial, and inflammatory comments by the prosecution. In order to succeed on an ineffective assistance of counsel claim based on failure to make objections, Petitioner must overcome the strong presumption that a counsel's failure to object is part of a trial strategy. *See Rizzo v. Capra*, No. 18 CIV 1185 (GBD) (KNF), 2019 WL 2511349, at *4 (S.D.N.Y. June 18, 2019) (Daniels, J.) (quoting *Acevedo v. Capra*, 600 F. App'x 801, 802-03 (2d Cir. 2015)). "Decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." *Broxmeyer v. United States*, 661 F.

App'x 744, 748 (2d Cir. 2016) (summary order) (quoting *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005)). Here, Petitioner has failed to establish deficient performance. The record demonstrates trial counsel did object to certain statements and actions of the prosecutor, and furthermore, many of the improper statements Petitioner alleges the prosecutor made were taken out of context and were not grounds for objection.

Petitioner also alleges trial counsel failed to cross-examine Detective Reichert, who testified about not being able to locate Amadou Diallo, and Detective Valenti, who testified to the microscopic ballistic comparison test that connected the firearm recovered from the scene of the burglary to the shell casing recovered at the scene of Nathanial Davis' murder. "Decisions whether to engage in cross-examination, and if so to what extent and in what matter are similarly strategic in nature." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Trial counsel did not cross-examine Detective Reichert about his failure to locate the key witness of the burglary charges against Petitioner and thus was able to argue there was no evidence of what occurred inside Diallo's apartment. This was a successful strategy as the jury acquitted Petitioner of two of the burglary charges. Detective Valenti testified about the ballistics comparison showing the gun recovered at Diallo's apartment matched the shell casings. Trial counsel's strategy was not to deny the gun was used but to deny it had been used by Petitioner. Thus, refraining from cross-examining Detective Valenti about that evidence was a reasonable strategy. *See, e.g., Ramirez v. United States*, 898 F. Supp. 2d 659, 666 (S.D.N.Y. 2012) (Scheindlin, J.).

Petitioner also alleges trial counsel failed to object to the admission into evidence of the murder weapon and other items recovered from Diallo's residence two days after the burglary. Pet. at 17. Petitioner argues the evidence was "lacking connection," and counsel should have

18

objected to its admission. *Id.* However, the evidence was admitted with the correct chain of custody, and a connection was established through the testimony of the police officers who arrested Petitioner. Specifically, Detective Valenti testified the gun matched the shell casings from the murder of Nathanial Davis. Also, at the time of the admission, trial counsel believed Diallo would be testifying about the evidence as well. The admission of the evidence was proper, and trial counsel did not have grounds to object to its admission. Petitioner fails to make out deficient performance for this claim.

Lastly, Petitioner alleges trial counsel failed to make a motion to sever the consolidated indictments. Counsel filed a response in opposition to consolidation and took exception to the trial court's ruling granting consolidation. R. 56. Trial counsel took steps to argue against consolidation and could have reasonably determined that the subsequent filing of a motion to sever would not have resulted in severance of the indictments. *See Dunham v. Travis*, 313 F.3d 724, 731 (2d Cir. 2002) (holding counsel was not deficient for failing to renew an already-denied motion). Trial counsel was not deficient in his performance for failing to file a motion on an issue the court had already decided.

As none of Petitioner's claims of ineffective assistance of counsel have met the *Strickland* standard, the state court's determination was not contrary to or an unreasonable application of established Supreme Court law, and the claims are therefore denied.

## III.   Petitioner's Claims of Judicial Error and Abuse of Discretion

Petitioner argues the trial court erred by (1) allowing the introduction of highly prejudicial evidence when it permitted the friends and family of the decedent to wear memorial badges in the courtroom and (2) failing to question jurors after Petitioner's co-defendant was arrested in the courtroom for taking photos of jurors. Petitioner's first claim is procedurally

barred and not cognizable under federal habeas review, and the two remaining claims are unexhausted and procedurally barred.

**A. The Admission of Evidence Claim is Procedurally Barred and Not Cognizable Under Federal Habeas Review**

Petitioner argued on direct appeal the trial court erred in admitting what Petitioner alleges is highly prejudicial evidence, including the murder weapon and the masks, gloves, and knife recovered after the burglary. R. 37-44. The Second Department found this claim to be unpreserved for review. *People v. Chisholm*, 2 N.Y.S.3d 365 (N.Y. App. Div. 2015). As the disposition of the claim is based on an adequate and independent state ground, the claim is procedurally barred and unavailable for federal habeas review. *Downs*, 657 F.3d at 101-02. Given that Petitioner's ineffective assistance of trial counsel claims are without merit, Petitioner has not put forth any valid cause for his failure to preserve these claims. *Rodriguez*, 485 F. Supp. 2d at 380. Nor has Petitioner cited any prejudice or argued actual innocence that would lead to a miscarriage of justice. *Coleman*, 501 U.S. at 750.

Further, the trial court's decision to admit the evidence is a matter of state evidence law and not federal constitutional law; it is therefore not cognizable for federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Olivares v. Ercole*, 975 F. Supp. 2d 345, 363 (S.D.N.Y. 2013) (Karas, J.) ("Generally, evidentiary rulings by a state trial court are matters of state law and do not present questions of constitutional dimension for habeas corpus review."). Erroneous evidentially rulings only amount to a constitutional error if the rule deprives the defendant of a fundamentally fair trial. *See Howard v. McGinnis*, 632 F. Supp. 2d 253, 270 (W.D.N.Y. 2009) (citing cases). Even if the trial court's evidentiary ruling were not permissible under New York Law, Petitioner's claims are not cognizable under federal habeas review

because the admission of the evidence did not have the effect of making the trial fundamentally unfair. *See Olivares*, 975 F. Supp. 2d at 363.

### B. Additional Claims of Judicial Error Are Not Exhausted and Are Procedurally Barred

Petitioner also argues the trial court erred in allowing the family and friends of the decedent to wear memorial badges in the courtroom and in failing to question jurors about the arrest of Petitioner's co-defendant, Anthony Lalor, who took photographs of jurors. These claims are not exhausted and are procedurally barred, as they were not raised on direct appeal or in Petitioner's motion to vacate the judgment. Petitioner did not raise these claims on direct appeal; rather, he raised them only in his writ of error *coram nobis*. Raising a claim in a writ of error *coram nobis* does not exhaust a claim. *See Tineo*, 2012 WL 4328361, at *6. While Petitioner's writ of error claimed ineffective assistance of appellate counsel for counsel's failure to raise these claims, Petitioner still failed to file a timely appeal with the Court of Appeals and thus failed to exhaust his ineffective assistance of appellate counsel claims. Petitioner cannot rely on an unexhausted ineffective assistance of counsel claim as cause to overcome a procedural default. *See Ekwegbalu*, 2021 WL 3111907, at *5. Petitioner is unable to overcome the procedural bar, and the claims are denied.

### IV. Petitioner's Claim Regarding the Trial Court's Decision to Consolidate the Indictments

Petitioner claims the trial judge's decisions to consolidate the two indictments violated his right against self-incrimination. Specifically, Petitioner wanted to testify about the burglary charges but did not want to testify about the murder charges. Pet. at 19. Respondent argues

21

Petitioner did not raise a federal constitutional claim in state court, so the claim was not "fairly presented" in state court and is thus unexhausted. Resp. Mem. at 61, ECF No. 14.

The Court must first determine whether Petitioner has properly raised a federal claim. In order to exhaust a claim in state court and thus properly raise a claim on federal habeas review, a petitioner must fairly present an opportunity for the state court to review the federal claim. *See Daye*, 696 F.2d at 192. "[T]he ways in which a state defendant may fairly present to the state court the constitutional nature of his claim . . . include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of pattern of facts that is well within the mainstream of constitutional litigation." *Id*. at 194.

On direct appeal, Petitioner argued the trial court's alleged error "prevented Appellant from taking the stand in his own behalf," referring to a state statute, CPL § 200.20, and several state court cases, including *People v. Lane*, 56 N.Y.2d 1, 5 (N.Y. 1982) and *People v. Connors*, 83 A.D.2d 640, 641 (N.Y. App. Div. 1981). R. 55-59. Petitioner did not rely on any federal cases, nor do the state cases he relies on employ any arguments or analysis of constitutional claims. However, Petitioner refers to "taking the stand on his own behalf" and to CPL § 200.20(3)(b) ("A convincing showing that a defendant has both important testimony to give concerning one count and a genuine need to refrain from testifying on the other, which satisfies the court that the risk of prejudice is substantial."). These phrases invoke or "call to mind" the Fifth Amendment right against self-incrimination, *Daye*, 696 F.2d at 194, and are "likely to alert the State court to the claim's federal nature." *Id*. at 193; *see also Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011). Petitioner's language specifically refers to the Fifth Amendment right not to

testify at trial.  Therefore, Petitioner has presented and exhausted a federal claim.  *Daye*, 696 F.2d at 193.

The Court must next determine whether Petitioner's claim concerning the joinder of his cases is cognizable under federal habeas review.  Generally, whether to grant joinder pursuant to a state statute is left to the discretion of the trial judge and, accordingly, there is no constitutional question to determine.  *Madden v. Fogg*, 501 F. Supp. 243, 246 (S.D.N.Y. 1980) (Pollack, J.) ("Joinder and severance are questions left to the discretion of the trial judge; no constitutional question is involved").

To elevate a joinder issue to one of constitutional magnitude, the petitioner must show the denial of severance rendered his trial fundamentally unfair and therefore violative of his right to due process.  *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993).  Habeas review of a state court's denial of severance is even more limited than direct appellate review.  *Alejandro v. Scully*, 529 F. Supp. 650, 651 (S.D.N.Y. 1982) (Ward, J.).  A habeas petitioner claiming a due process violation based upon joinder of offenses "must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during . . . trial."  *Herring*, 11 F.3d at 377–78 (quotation omitted).  "Substantial prejudice does not simply mean a better chance of acquittal."  *See, e.g., Bennett v. Stallone*, No. 6:13-CV-6349 (MAT), 2014 WL 122381, at *7 (W.D.N.Y. Jan. 13, 2014) (citing *United States v. Alvarado*, 882 F.2d 645, 655 (2d Cir. 1989); *Moore v. West*, No. 9:03-CV-0053 (FJS) (DEP), 2007 WL 1302426, at *13–14 (N.D.N.Y. May 1, 2007); *Jones v. Artus*, No. 9:13-CV-00768 (JKS), 2016 WL 3248402, at *4 (N.D.N.Y. June 13, 2016).

The two indictments against Petitioner were statutorily joinable because proof of one offense was material and admissible as evidence in chief upon trial of the other.  CPL §

23

200.20(2)(b).  Petitioner is therefore required to show he was entitled to severance under CPL §

200.20(3).  Petitioner argued he had important testimony to give for one of the indictments and a

genuine need to refrain from testifying on the other indictment.  CPL § 200.20(3)(b).  According

to Petitioner, he would have denied the burglary charges on the basis that he never had any

intention to enter Diallo's residence and would have denied the use or threatened use of any

weapon.  He also argues he had a strong reason to refrain from testifying to the murder charges

so as not to "open the door, even accidentally to the People's efforts to put him in allegedly close

proximity to the murder weapon."  R. 57.  The Second Department found Petitioner had not

made a strong enough showing to overcome the joinder.  R. 181.  Petitioner's argument about his

inability to testify about the burglary charges does not meet the burden of proof of showing

actual prejudice.  The mere potential for a better chance of acquittal does not satisfy substantial

prejudice.  *Alvarado*, 882 F.2d at 655.  Additionally, even though Petitioner did not testify in his

own defense, the jury acquitted him of two charges related to entering Diallo's residence with a

gun.  Based upon the record, Petitioner cannot show actual prejudice; the claim is therefore not

cognizable under federal habeas review.  *See Shand v. Miller*, 412 F. Supp. 2d 267, 273

(W.D.N.Y. 2006).

## V.      Petitioner's Claim the Evidence Was Legally Insufficient to Establish Guilt Beyond a Reasonable Doubt

Petitioner's final claim is that the testimony of the eyewitness Phenton Edwards was not

credible and lacked corroboration; therefore, according to Petitioner, the evidence used to

establish guilt beyond a reasonable doubt was legally insufficient.  Pet. at 14, 21.  On direct

appeal, the Second Department rejected this claim on the merits, finding "it was legally sufficient

to establish the defendant's guilt of murder in the second degree beyond a reasonable doubt.

Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilty as to that crime was not against the weight of the evidence." *People v. Chisholm*, 2 N.Y.S.3d 365 (N.Y. App. Div. 2015). This Court agrees.

A petitioner bears a heavy burden when bringing a legal sufficiency claim. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) ("[Insufficiency of the evidence] claims face a high bar in federal habeas proceedings . . . ."). Where a state court has rejected a claim on the merits, a federal court may grant a defendant habeas relief on an issue of law only if the state court's decision is contrary to, or an unreasonable application of, the relevant Supreme Court precedent. *See Smith v. Wenderlich*, 826 F.3d 641, 649 (2d Cir. 2016). The Supreme Court has held "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 326 (1979) ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution.") (citation and quotation marks omitted). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos*, 565 U.S. at 2 (internal quotation marks omitted). Furthermore, where the state has first rejected the sufficiency claim on the merits, federal habeas review is even more deferential. *Id.* at 2 ("[T]he deference to state court decisions required by § 2254(d)" is to be "applied to the [] already deferential review" of *Jackson*[.]"). In evaluating the legal sufficiency of the evidence introduced at trial, "'a reviewing

court must consider all of the evidence admitted by the trial court,' regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (citation omitted); *see Lockhart v. Nelson*, 488 U.S. 33, 40–42 (1988) (same).

Insofar as Petitioner seeks to challenge the weight of the evidence, the Court rejects that claim. The question of whether a verdict is against the weight of the evidence presents only a question of state law. *See* CPL § 470.15(5); *People v. Bleakley*, 69 N.Y.2d 490, 494–95 (N.Y. 1987). Because a claim regarding the weight of the evidence does not raise a federal constitutional issue, the claim provides no basis to grant a writ of habeas corpus. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 355 Fed. App'x 469, 475 (2d Cir. 2009) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus") (summary order) (citing cases). Thus, the Court solely addresses whether the evidence was legally sufficient.

Here, the Second Department's decision to reject Petitioner's claims on the merits was not "objectively unreasonable," given the evidence the jury considered. *See Cavazos*, 565 U.S. at 2. Phenton Edwards testified that on April 17, 2006, at approximately 1:25 P.M., outside of 103-11 Farmers Boulevard in Queens County, New York, he was with three individuals, the decedent Nathanial Davis, Courtney Petrie, and Petrie's child. R. 912-14. Edwards testified he saw Petitioner and another male holding a shotgun in the yard next door. R. 917, 921. He observed Petitioner raise his hand with what appeared to be a firearm. Edwards testified he heard a loud noise and dropped to the ground to avoid the gunshots and stayed on the ground until the gunshots stopped. R. 921. Edwards testified he heard multiple gunshots, some of which he believed to be fired from a shotgun and some of which he believed to be fired from another type of gun. R. 922, 930. When Edwards stood up, he assisted Petrie in taking the child

inside, and when he returned outside, he observed Nathanial Davis on the ground holding his stomach. R. 923-25. Edwards called 911 and was questioned by the police at the scene and at the precinct about the identity of the shooter. R. 925, 930-31. Edwards did not disclose to the police the identity of the shooter until several months later. R. 933. Edwards also testified he had known Petitioner for eight to ten years, he knew Petitioner's father, and he and Petitioner had a misunderstanding two weeks prior when they were both living at 103-11 Farmers Boulevard. R. 919-20. Detective Charles LoPresti testified he had observed a bullet fall out of the clothing of the decedent, Davis, as he was placed into an ambulance. R. 975. Detective Thomas Forte testified that a shell casing was later recovered from the driveway. R. 734-737. Sergeant Michael McKenna testified that on June 30, 2006, he and Officer Brenda Joy Bratcher entered 116-42 Lincoln Street. R. 653-54, 992, 997. Sergeant McKenna and Officer Bratcher both testified they observed Amadou Diallo unconscious, lying on the floor and bleeding from a wound to his head. R. 654, 1000. Sergeant McKenna observed Detective Fisher pull Petitioner and another individual, Anthony Lalor, from the stairwell. R. 998-1000. Officer Steven Hearns testified that on July 2, 2006, two days after Petitioner was arrested, Officer Hearns met Police Officer Betts and Amadou Diallo at 116-42 Lincoln Street. R. 884-86. Officer Betts showed him two firearms, a revolver and a .380 caliber pistol. R. 886-87. According to Detective James Valenti, the bullet recovered on April 17, 2006, at 103-11 Farmers Boulevard was fired from the .380 caliber pistol recovered from 116-42 Lincoln Street on July 2, 2006. R. 871-79. The extensive evidence presented to the jury demonstrates there was legally sufficient evidence to prove the charge of Murder in the Second Degree beyond a reasonable doubt.

Petitioner also argues the witness, Phenton Edwards, was not credible. However, credibility determinations are entrusted to the fact-finder, and a court reviewing a habeas

27

petitioner may not revisit the jury's credibility determinations. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) (Garaufis, J.) ("Federal habeas courts are not free to reassess the fact-specific credibility judgments by juries or to weigh conflicting testimony." (citations and alterations omitted)); *Shamsuddin v. Smith*, No. 9:20-CV-0955 (DNH), 2022 WL 23992, at *7 (N.D.N.Y. Jan. 4, 2022) (citing *Marshall v. Lonberger*, 459 U.S. 422 (1983)).

Considering the highly deferential standard AEDPA requires, the Court concludes a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have convicted Petitioner of Murder in the Second Degree beyond a reasonable doubt. Accordingly, the Appellate Division's decision on this claim was neither contrary to nor an unreasonable application of federal constitutional law. Petitioner's claim is therefore denied.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

SO ORDERED.

S/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 14, 2022
Brooklyn, New York

28